```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

Christopher Martin

    v.                                          Civil No. 16-cv-462-LM
                                                 Opinion No. 2017 DNH 244

Warden, New Hampshire
State Prison

## **O R D E R**

Christopher Martin seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on burglary charges. In support, Martin claims that his counsel provided constitutionally ineffective assistance during the criminal proceedings. The Warden, Michael Zenk, moves for summary judgment. Martin objects.

## **Background**

Following the events that are described below, Martin was charged with two counts of being an accomplice to theft by unauthorized taking, one count of being an accomplice to burglary, and one count of conspiracy to commit burglary. He was convicted in New Hampshire Superior Court, Rockingham County, on all four charges and was sentenced to a total of 10 to 30 years in prison. His direct appeal was dismissed on procedural grounds.

Martin then filed a petition for a writ of habeas corpus in the superior court, asserting claims of ineffective assistance of counsel. His petition was construed as a motion for a new trial under RSA 526:1-4, and was denied after a hearing. Martin v. Gerry, No. 217-2014-CV-354 (N.H. Super. Ct. Feb. 28, 2017).[1] The New Hampshire Supreme Court declined Martin's notice of discretionary appeal. The decision under review here is the superior court's February 28, 2017 decision denying Martin's motion for a new trial, and the factual background is taken from that decision and the transcripts of the state criminal trial. See Ylst v. Nunnemaker, 501 U.S. 797, 804-06 (1991).

I. History of Relationship with Victim

Martin's father had a plumbing business, where Martin worked beginning when he was a teenager. At some point, Martin met Dr. Arthur Cutter, a veterinarian, who hired Martin's father as a plumber. Martin eventually took over his father's business, and Cutter continued to hire Martin to provide plumbing services. Cutter and Martin had a friendly relationship, and they had engaged in recreational firearm

---

[1] Martin included a copy of the superior court's February 28, 2017 order in an earlier filing. See doc. no. 3-2 at 17-43.

2

shooting together.  In addition, Martin's wife bought a horse from Cutter and used Cutter as the veterinarian for the horse.

Cutter operated his veterinarian practice out of the basement in his home in Deerfield, New Hampshire.  Martin provided plumbing services to Cutter in the residential part of Cutter's home.  On one occasion, Martin fixed a sink drain in a bathroom off of Cutter's bedroom, where Cutter had a safe.

In March or April 2011, Martin hired Jacob Eric Palo as a day laborer in his plumbing business.  Palo lived with his girlfriend, Sherri Avnet, in an apartment in Manchester.  Avnet was a drug addict who used heroin, cocaine, and Xanax.  Martin, who was also a drug user, began visiting Palo's apartment to exchange drugs.  Martin recommended Cutter as a veterinarian and gave Palo Cutter's telephone number, address, and directions to his house.

## II.  The Burglary

During one visit with Palo and Avnet, Martin told Palo about the safe in Cutter's bedroom, which Martin said contained money, and also told Palo that Cutter had a gun under the stairs in his home.  Martin and Palo discussed a plan in which Martin would drop Palo at Cutter's house, and Palo would force Cutter to open the safe so that Palo could steal the contents.  Under

the plan, Martin would get part of the money from the safe and possibly the gun.

On June 29, 2011, Martin picked up Palo and Avnet in his van. Palo showed Martin a BB gun and said that he was going to confront "someone . . . who owed him a debt." Doc. no. 3-2 at 19. Martin dropped Palo and Avnet near Cutter's driveway and then drove to a job site.

Palo went to Cutter's door, and when Cutter opened the door, Palo attacked him. Palo beat Cutter and forced him to open the safe. Palo stole money, silver, and a gun, and then drove away in Cutter's Cadillac. Cutter went to a neighbor's home to call the police.

Palo pulled over along a road to bury the stolen items and then continued driving in Cutter's car. He eventually encountered a state trooper and attempted to escape, but the trooper pursued him. Because of spikes the Raymond police put in the road to assist in Palo's capture, Palo crashed Cutter's car in Raymond and fled into the woods on foot. Palo then stole a pickup truck. While being pursued in the truck, Palo hit an Epping police cruiser, causing damage to the truck. Eventually, Palo was apprehended and taken into custody.

In the meantime, Avnet was hiding in the woods near Cutter's home but then walked into the street near the house. When she heard crashing inside the house, she texted Martin,

asking what she should do. Martin instructed her to stop using the phone, to throw the phone away, and to walk away from the area and hide. Avnet texted back that the police had left, and Martin responded: "Wait where you are. He will be there. Just stay hidden, ok?" Doc. no. 3-2 at 20. No one came, and Avnet wandered into a neighbor's yard. The homeowners saw Avnet and noticed that she was texting and pointing a flashlight at passing cars. They called the police.

The responding officer from the Deerfield Police Department noticed that Avnet was impaired and took her into custody. The officer found that Avnet had two backpacks with cell phone chargers, a flashlight, license plates, duct tape, a knife, and bleach. Avnet told the police that Palo had broken into Cutter's house to steal a safe that contained gold and money. Avnet also told the police that Martin was involved in the robbery.

III. Investigation of Martin

On June 30, 2011, the state police contacted Martin, who lived in Danbury, New Hampshire, for an interview. Martin drove himself to the Danbury Police Department to meet with the state police interviewer. The interview was conducted in the large community room in the town hall at a conference table. Although the door was closed for privacy, it was not locked, and Martin

5

was free to leave at any time. He did leave the room occasionally for breaks. During the interview, Martin changed his story several times.

The state police interviewed Martin again on July 20, 2011, this time in Concord. Martin voluntarily drove himself to the interview. At the beginning of the interview, Martin told the interviewer that his version of events would be different from what he said at the prior interview. Again, Martin was told he was free to leave. During this interview, Martin admitted that he gave Palo and Avnet a ride on June 30 so that Palo could collect money owed to him, but claimed he dropped them off in Concord. Despite cell phone records placing him in Deerfield, he denied that he drove to Deerfield, where Cutter lived, and denied being involved in the attack and robbery. At the conclusion of the interview, the state police arrested him for conspiracy to commit burglary.

IV. Trial

Martin was charged with one count of conspiracy to commit burglary, one count of accomplice to burglary, and two counts of accomplice to theft by unauthorized taking. On the recommendation of his counsel, before trial, Martin stipulated to the following facts:

> 1. On or about the 29th of June, 2011, Jacob Palo committed a burglary at the home of Arthur Cutter in Deerfield, N.H.;
>
> 2. During which Palo recklessly inflicted bodily injury on Arthur Cutter;
>
> 3. Further, Palo entered the Cutter residence and obtained or exercised unauthorized control over United States Currency in an amount greater than $1,500, the property of Arthur Cutter, and removed that currency from the Cutter residence with the purpose to deprive Cutter thereof.
>
> 4. Palo entered the Cutter residence and obtained or exercised unauthorized control over a 9 mm pistol, a firearm, the property of Arthur Cutter, and took that firearm from the Cutter residence with the purpose to deprive Cutter thereof.

Doc. no. 3-2 at 21-22. Avnet pleaded guilty and testified at trial that she conspired with Palo and Martin to commit burglary and theft. In addition to Avnet, several others testified for the state, including Cutter, the officer who took Avnet into custody, and the state police detectives who interviewed Martin and worked on the case. Martin and his wife testified for the defense. The jury convicted Martin on all charges.

Martin appealed his conviction to the New Hampshire Supreme Court ("NHSC"). The NHSC dismissed his appeal on procedural grounds.

V. Petition for Habeas Relief to Superior Court

Martin filed a petition for writ of habeas corpus in the superior court. Because Martin's claims arose out of a trial

7

that occurred before that court, the court construed his petition as a motion for a new trial under RSA 526:1-4. Martin asserted in his motion for a new trial that his trial counsel was ineffective because he: (1) advised Martin to agree to stipulated facts about Palo's actions; (2) failed to introduce potentially exculpatory evidence; (3) failed to move to dismiss the charges for insufficiency of the evidence; and (4) failed to move to suppress Martin's two statements to the state police. On February 8, 2016, the superior court denied Martin's motion for a new trial.

Martin subsequently filed a notice of discretionary appeal to the NHSC. The NHSC declined the notice on April 15, 2016. Martin then filed a petition for writ of habeas corpus in this court, and the Warden now moves for summary judgment.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court cannot grant habeas relief with respect to a claim that was adjudicated on the merits in state court unless adjudication of the claim resulted in a decision that (i) "was contrary to" clearly established federal law, as determined by the Supreme Court of the United States, (ii) involved an "unreasonable application of" clearly established federal law, or (iii) was based on an "unreasonable

8

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" established Supreme Court precedent if either the state court reaches a conclusion on a question of law "diametrically different" to that reached by the Supreme Court, or a state court "confronts a set of facts that are materially indistinguishable" from relevant Supreme Court precedent and reaches an opposite result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court (i) "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts" of a prisoner's case, (ii) "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply" or (iii) "unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407; see L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002). In order to meet this standard, the state court's application of law must contain "some increment of incorrectness beyond error . . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." McCambridge v. Hall, 303 F.3d

9

24, 36 (1st Cir. 2002) (internal quotation marks and citation omitted).

This deferential standard of review applies to all claims that were "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). "If the federal claim was never addressed by the state court, federal review is de novo." Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007). Here, Martin presented the same claims of ineffective assistance of counsel to the state superior court, and that court considered and rejected those claims on the merits.[2] As a result, the deferential standard required by § 2254(d) applies here. Lucien v. Spencer, 871 F.3d 117, 122 (1st Cir. 2017).

**Discussion**

Martin seeks a writ of habeas corpus based on the same four claims of ineffective assistance of counsel that he brought in his motion for a new trial in the superior court. The Warden moves for summary judgment on the ground that Martin cannot show that the superior court's decision that rejected Martin's claims was contrary to or an unreasonable application of federal law. Martin objects.

---

[2] In the superior court proceeding, Martin also brought a claim of ineffective assistance of counsel based on "a broad generalization that trial counsel failed to object numerous times throughout trial." Doc. no. 3-2 at 43. Martin does not pursue that claim here.

I. <u>Deferential Standard of Review</u>

In his petition and his objection to summary judgment, Martin does not contend that the superior court's decision denying his ineffective assistance of counsel claims was contrary to clearly established federal law as determined by the Supreme Court. Nor does he argue that the superior court's decision was based on an unreasonable application of federal law or on an unreasonable determination of the facts. Indeed, for the most part, Martin ignores entirely the superior court's decision. Instead, Martin urges this court to consider and decide his claims on the merits and to find that his trial counsel provided ineffective assistance without considering the decision rendered by the superior court.

As discussed, all of the ineffective assistance of counsel claims Martin raises in his petition for writ of habeas corpus were adjudicated on the merits and, therefore, AEDPA "mandates highly deferential federal court review of [the] state court holdings." Zuluaga v. Spencer, 585 F.3d 27, 29 (1st Cir. 2009). Thus, although Martin appears to seek de novo review of his claims, the court employs the deferential standard of review in considering whether the Warden has shown that he is entitled to summary judgment.

A defendant has a constitutional right to the effective assistance of counsel at every critical stage of a criminal proceeding. Lee v. United States, 137 S. Ct. 1958, 1964 (2017). To establish an ineffective assistance of counsel claim, a petitioner must prove both "deficient performance by counsel and resulting prejudice." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 692 (1984)).

The "deficient performance" prong of this standard requires proof that trial counsel's representation fell below "an objective standard of reasonableness," Pina v. Maloney, 565 F.3d 48, 54-55 (1st Cir. 2009), as measured "under prevailing professional norms." Strickland, 466 U.S. at 688. "This is a highly deferential review, 'making every effort to eliminate the distorting effects of hindsight.'" Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (quoting Strickland, 466 U.S. at 689). Accordingly, counsel has "wide latitude in deciding how best to represent a client," Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003), and those decisions are entitled to a strong presumption that counsel has rendered adequate assistance and exercised reasonable professional judgment. Strickland, 466 U.S. at 690; see United States v. Dunfee, 821 F.3d 120, 128 (1st Cir. 2016). To meet the prejudice requirement, a petitioner must show that it is "reasonably likely that the result of the criminal

12

proceeding would have been different if counsel had performed as the defendant asserts he should have."[3] Rivera-Rivera v. United States, 827 F.3d 184, 187 (2016) (internal quotation marks omitted), cert. denied, 137 S. Ct. 696 (2017).

"The deferential standard set forth in Strickland becomes 'doubly' deferential when applied in the context of a habeas petition under § 2254(d)." Leng v. Gelb, No. 14-CV-10462-ADB, 2016 WL 7428221, at *5 (D. Mass. Dec. 22, 2016) (quoting Harrington v. Richter, 562 U.S. 86, 105 (2011)). "The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

As mentioned, Martin claims that his trial counsel was ineffective because he 1) advised Martin to agree to stipulated facts about Palo's actions, 2) failed to introduce potentially exculpatory evidence, 3) failed to move to dismiss the charges for insufficiency of the evidence, and 4) failed to move to suppress Martin's statements made to the state police during the

---

[3] The superior court relied on the New Hampshire standard for ineffective assistance of counsel, which is based on the federal Strickland standard, as stated in State v. Whittaker, 158 N.H. 762, 768 (2009). As the superior court correctly noted that the standard for ineffective assistance of counsel is the same under both the New Hampshire Constitution and the United States Constitution, the court relies on Strickland and its progeny.

13

two interviews.  The court addresses each of these claims under the standards set forth above.

II. Stipulations

Martin alleges in his petition that his trial counsel erred by advising him to agree to the stipulations about Palo's criminal actions because the stipulations eliminated the need for the government to prove those actions at trial.  He alleges that trial counsel gave that advice to avoid Palo's testimony at trial about the attack on Cutter because he thought the details of the attack and robbery would influence the jury against Martin even though counsel knew before the stipulations were entered that Palo likely would not testify at trial.

Martin also cites his trial counsel's testimony at the superior court's hearing that he advised in favor of the stipulations because he thought that otherwise Palo's convictions would be admissible at trial or that the court could take judicial notice of the convictions.  Martin contends that counsel was mistaken.

The superior court credited Martin's counsel's explanation that the defense theory was that Martin was not part of the conspiracy to commit the crime and that he was not aware of what Palo and Avnet were planning.  The superior court concluded,

however, that Martin's counsel erred in advising him that Palo's convictions would be admissible even if Palo did not testify.

The superior court found that trial counsel's mistake was not prejudicial because there "is no reasonable probability that the result of the trial would have been different had there been no stipulation." Doc. no. 3-2 at 28. The superior court noted that even in the absence of the stipulation, there was substantial evidence through Avnet's and Cutter's testimony to prove that Palo committed the burglary. The court also found that the stipulations were a reasonable strategy to minimize evidence of Palo's violent acts.[4]

The superior court applied a standard for assessing ineffective assistance of counsel with respect to the stipulations that is the same as the federal standard under Strickland. The court then applied that standard in a reasonable manner. Therefore, the Warden is entitled to summary

---

[4] The superior court also found that Martin knowingly and intelligently accepted counsel's defense strategy to stipulate to Palo's actions, quoting a colloquy the trial court had with Martin concerning the stipulations. In the objection to summary judgment, Martin appears to argue that he did not knowingly and intelligently accept that strategy because he was not aware of the other options available. As is noted above, however, the superior court found that Martin suffered no prejudice from the stipulations because of the amount of evidence of Palo's actions. For that reason, even if Martin accepted the stipulations based on deficient advice from his counsel, he suffered no prejudice as a result.

15

judgment on the portion of Martin's claim based on the stipulations.

III. Exculpatory Evidence

Martin contends that his counsel should have introduced the statement Palo gave to the police about the burglary because Palo did not name Martin as a co-conspirator in the crime. Because Palo did not implicate him, Martin asserts that the statement was exculpatory. The superior court found that although the statement did not directly implicate Martin in the burglary, it did not exonerate him of participating in the conspiracy. The superior court concluded that it was a reasonable trial strategy not to introduce Palo's statement because of the defense strategy to disassociate Martin from Palo.

The superior court applied a standard for ineffective assistance of counsel to this portion of the claim in a manner that was neither contrary to nor an unreasonable application of federal law. Therefore, the Warden is entitled to summary judgment on the portion of Martin's claim based on allegedly exculpatory evidence.

IV. Motion to Dismiss

Martin contends that his trial counsel provided deficient representation because he did not move to dismiss the charges at

16

the close of the state's case. He argues that there was insufficient evidence to prove beyond a reasonable doubt that he committed the charged crimes. He also asserts that a motion to dismiss would have been granted.

Martin was charged with being an accomplice to theft by unauthorized taking, accomplice to burglary, and conspiracy to commit burglary. He does not dispute that Palo committed theft by unauthorized taking and burglary, and he agreed to the stipulations regarding Palo's conduct.

Under New Hampshire law, "[a] person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable or both." RSA 626:8, I. "A person is an accomplice of another person in the commission of an offense if . . . he solicits such other person in committing [the offense], or aids or agrees or attempts to aid such other person in planning or committing [the offense]." RSA 626:8, III(a). "A person is guilty of conspiracy if, with a purpose that a crime defined by statute be committed, he agrees with one or more persons to commit or cause the commission of such crime, and an overt act is committed by one of the conspirators in furtherance of the conspiracy." RSA 629:3, I.

In the superior court proceeding, Martin argued that the evidence submitted by the State at trial was insufficient to

prove that he had committed the charged crimes beyond a reasonable doubt. In support, Martin noted that there was no evidence that he was present at Cutter's house when the burglary occurred, that Cutter testified he did not hear any mention of Martin on the night of the invasion, Avnet's conflicting statements to the police, and Martin's wife's testimony that a hand-drawn map of Cutter's house was not in Martin's handwriting. In his petition in this court, Martin has advanced the same evidentiary issues that he raised in the superior court proceeding.

The superior court analyzed the elements of the charges against Martin and concluded that the deficiencies Martin cited were not material, particularly in light of the evidence of his participation in the crimes. The court cited Avnet's testimony that Martin drove Palo and Avnet to Cutter's house on the night of the burglary. The court also explained that despite Martin's wife's testimony that the map to Cutter's house was not in Martin's handwriting, there was other evidence that Martin had been inside Cutter's house and had given Palo information about the residence. Based on the evidence at trial, the superior court concluded that there was sufficient evidence of Martin's guilt to support a guilty verdict such that the lack of a motion to dismiss could not constitute ineffective assistance of

counsel. That determination was neither contrary to nor an unreasonable application of federal law.

V. Motion to Suppress

In his objection, Martin opposes summary judgment on three of his four claims. He does not address his claim based on counsel's failure to move to suppress his statements made during the interviews by state police.

Even had Martin raised an objection, it would be without merit. The superior court denied the claim based on state and federal law pertaining to interrogating a suspect. The superior court also noted that even had Martin's counsel moved to suppress certain statements, and even had the trial court granted that motion, "it would not have barred any evidence that was admitted at trial." Doc. no. 3-2 at 39. The superior court's analysis was neither contrary to nor an unreasonable application of federal law.[5]

---

[5] Regardless, Martin's failure to object entitles the Warden to summary judgment on this portion of Martin's claim. See Eck v. Neal, No. 1:14-cv-13693-ADB, 2017 WL 4364171, at *6 n.5 (D. Mass. Sept. 29, 2017) ("A failure to respond to a movant's bid for summary judgment on certain claims is, in itself, a basis on which to grant summary judgment as to those issues." (internal quotation marks and citation omitted)); see also Eldridge v. Gordon Bros. Gr., L.L.C., 863 F.3d 66, 83 (1st Cir. 2017) (plaintiff's failure to object to summary judgment as to a claim constitutes a waiver of any objection as to summary judgment on that claim)

**Conclusion**

For the foregoing reasons, the Warden's motion for summary judgment (document no. 6) is granted. The petition is dismissed.

The clerk of court shall enter judgment accordingly and close the case.

Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); Rule 11, Rules Governing Habeas Corpus Cases Under Section 2254.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

December 4, 2017

cc: All counsel of record

20